UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ORGANO GOLD INT'L, INC., | CASE NO. C18-0108JLR |
| Plaintiff, | ORDER GRANTING MOTION TO TRANSFER |
| v. | |
| AUSSIE RULES MARINE SERVICES, LTD., et al., | |
| Defendants. | |

## I.      INTRODUCTION

Before the court is Aussie Rules Marine Services ("ARMS"), Greg Norman, and ABG-Shark, LLC's ("Shark") (collectively, "Defendants") motion to transfer this action to the Southern District of Florida, or in the alternative, to dismiss Plaintiff Organo Gold International, Inc.'s ("Organo") complaint for lack of personal jurisdiction.  (Mot. (Dkt. # 8).)  The court has considered the motion, all of the parties' submissions in support of and in opposition to the motion, the relevant portions of the record, and the applicable

1   law.  Being fully advised,[1] the court GRANTS Defendants' motion to transfer venue

2   pursuant to 28 U.S.C. § 1404(a).

3                  **II.   BACKGROUND**

4        Organo, a Nevada corporation, sells "ganoderma-infused beverages, dietary

5   supplements[,] and other nutraceuticals."  (Compl. (Dkt. # 1) ¶¶ 1, 8.)  Organo has global

6   business operations in "the United States, Canada, Mexico, and over 40 other countries."

7   (*Id.* ¶ 1.)  Organo's headquarters are located in Richmond, British Columbia, Canada, but

8   the company also maintains an office in Ferndale, Washington to manage its United

9   States operations.  (Resp. at 1.)  In Ferndale, Organo maintains "an office and warehouse,

10   and employs 10 people who commute to and from" the Canadian corporate headquarters

11   regularly.  (*Id.* at 2.)

12        Organo representatives met representatives from ARMS, a Cayman Islands

13   corporation controlled by Mr. Norman—a retired professional golfer and a resident of

14   Florida (Compl. ¶¶ 2-3, 10)—for the first time during the 2013 Master's Tournament

15   (Mot. at 3).  In July 2013, after the initial meeting, Organo, ARMS, and Mr. Norman

16   entered into two contracts (collectively, "the Agreements").  (*Id.*; Compl. ¶¶ 11-12.)

17   First, the parties entered into the "License Agreement," by which the parties "agreed to

18   develop a specific line of premier coffee products utilizing [Mr.] Norman's name and

19   likeness (the 'Norman Identity') and to promote the product line and Organo's business."

20

21            [1] No party requests oral argument (*see* Mot. at 1; Resp. (Dkt. # 15) at 1), and the court concludes that oral argument would not be helpful to the disposition of the motion, *see* Local

22   Rules W.D. Wash. LCR 7(b)(4) ("Unless otherwise ordered by the court, all motions will be decided . . . without oral argument.").

1   (Compl. ¶ 11.)  Second, the parties entered into the "Promotion and Services

2   Agreement," by which Mr. Norman "agreed to make personal appearances and perform

3   certain professional management consulting services" related to the new product line

4   ("Branded Products").  (*Id.* ¶ 12.)  Under the Agreements, Organo agreed to pay Mr.

5   Norman and ARMS approximately $5 million over five years.  (*Id.* ¶ 13.)  The

6   Agreements explicitly state that the parties "hereby expressly consent" to the jurisdiction

7   of Florida courts.  (Mot., Ex. A ("Agreements") at ¶ 19.8.)[2]

8          Specifically, under the License Agreement, Defendants granted Organo "the right

9   and license to use the Norman Identity during the Contract Period and throughout the

10  Contract Territory."  (*Id.* ¶ 2.2.)  In return for the right to use Mr. Norman's brand image,

11  Organo agreed to make "guaranteed payments," pay "monthly royalties," and provide

12  "free product."  (Resp. at 3; *id.* ¶ 3.2.)  Defendants also retained a certain amount of

13  quality control over the Branded Products and "the Licensing Agreement provided that

14  Organo would organize no fewer than two tastings for each Branded Product to allow for

15  [Mr.] Norman's directional input."  (Agreements ¶ 10.4; *see also* Resp. at 3.)

16         Organo negotiated the Agreements with ARMS and Mr. Norman via email and

17  telephone from the company's Canadian headquarters.  (Filon Decl. (Dkt. # 10) ¶ 8;

18  Perrett Decl. (Dkt # 16) ¶ 13.)  Once the parties reached a consensus, Organo emailed the

19  contracts to ARMS and Mr. Norman, who signed the Agreements in Florida.  (Filon

20  Decl. ¶ 6.)  During this time, Mr. Norman and ARMS never visited Organo's Ferndale

21

22         ———————————

    [2] Neither party disputes the authenticity of the Agreements that Defendants attach to their
    motion.  (*See* Mot.; Resp.; Reply.)

1    office or warehouse.  (*Id.*)  Similarly, Organo representatives did not travel to Florida.

2    (Perret Decl. ¶ 13.)

3          After executing the License Agreement, Mr. Norman received a "high-ranking

4    Organo Distributorship, which he directed to put in the name of his business advisor,

5    David Chessler."  (Resp. at 4-5.)  Mr. Chessler signed an "Independent Distributor

6    Agreement" ("IDA"), "which permitted the Defendants to sell the products

7    themselves . . . and thereby receive both royalties and commissions from the sale of

8    products by persons under their charge."  (*Id.* at 5; *see* Perret Decl. ¶¶ 8, 18.)  Mr.

9    Chessler entered "approximately 20 purchase orders, generating approximately

10   $31,000[.00] in commissions."  (*Id.* ¶ 18.)  The orders were processed and shipped from

11   Organo's Ferndale warehouse.  (*Id.*)

12         On January 24, 2018, Organo filed this suit against Defendants asserting breach of

13   contract.  (*See generally* Compl.)  Organo contends that ARMS and Mr. Norman

14   breached the Agreements by:

15         (1) Not using commercially reasonable efforts to obtain and maintain
           trademark registrations for the Branded Products using the Norman identity;
16         (2) failing to make Mr. Norman available for the required number of personal
           appearances; (3) failing to discuss and arrange for availability; (4) failing to
17         take reasonable efforts to promote the Branded Products; (5) failing to
           establish a business plan; and (6) failing to provide professional management
18         consulting services for Organo's business.

19   (Resp. at 6; *see also* Compl. ¶¶ 15-17.)  Organo also asserts that Mr. Norman "sold or

20   otherwise transferred all of the underlying rights to the subject matter of the License

21   Agreement (the right to exploit the Norman Identity itself)" to Shark without Organo's

22   //

ORDER - 4

1   express consent.  (Compl. ¶ 22.)  The court now considers Defendants' motion to transfer

2   or dismiss for lack of personal jurisdiction.[3]  (*See* Mot.)

3                                         **III.   ANALYSIS**

4         "For the convenience of parties and witnesses, in the interest of justice, a district

5   court may transfer any civil action to any other district or division where it might have

6   been brought."  28 U.S.C. § 1404(a).  The threshold question is whether the plaintiff

7   could have originally brought the action in the forum proposed for transfer.  *See Hoffman*

8   *v. Blaski*, 363 U.S. 335, 344 (1960).  To resolve the threshold question, the moving party

9   must make three showings:  (1) that the transferee court possesses subject matter

10   jurisdiction over the action, (2) that venue would have been proper in the transferee court,

11   and (3) that all the parties would be subject to personal jurisdiction in the transferee court.

12   *Id.*

13         Here, there is no dispute that Organo could have originally brought this suit in the

14   Southern District of Florida.  (*See* Mot. at 4; Resp. at 4.)  The Southern District of Florida

15   possesses subject matter jurisdiction over this action based on 28 U.S.C. § 1332 because

16   there is complete diversity between Organo and each Defendant, and the amount in

17   controversy exceeds $75,000.00.  (*See* Compl. ¶¶ 1-5); *see also* 28 U.S.C. § 1332(a).

18   Furthermore, Organo does not dispute the fact that it consented to personal jurisdiction in

19

20         [3] The court may consider Defendants' motion to transfer under 28 U.S.C. § 1404(a)
without first determining the issue of personal jurisdiction.  *See Stanbury Elec. Eng'g, LLC v.*

21   *Energy Prod., Inc.*, No. C16-0362JLR, 2016 WL 3255003, at *1-2 (W.D. Wash. June 13, 2016)
(stating that personal jurisdiction is only necessary if the court seeks to issue a judgment on the

22   merits); *cf. United States v. Berkowitz*, 328 F.2d 358, 360-61 (3d Cir. 1964) (citing *Goldlawr,*
*Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962)).

1  Florida.  (Resp. at 4; Agreements ¶ 19.8.)  Lastly, venue is proper in the Southern District

2  of Florida because the actions underlying the asserted claims occurred there and the

3  parties are also subject to personal jurisdiction in Florida.  *See* 28 U.S.C. §§ 1391(b)(2),

4  (b)(3).

5      Once the court resolves the threshold question, district courts have discretion to

6  transfer venue on a case-by-case basis.  *Stewart Org., Inc. v. Ricoh Corp*., 487 U.S. 22,

7  29 (1988).  In determining whether to transfer an action, the district court weighs a

8  number of "case-specific factors."  *Id*.  These factors generally concern the relative

9  impact of the venue on the private parties participating in the litigation; the parties'

10  access to evidence; the availability of compulsory process; "and all other practical

11  problems that make trial of a case easy, expeditious and inexpensive."  *Gulf Oil Corp. v.*

12  *Gilbert*, 330 U.S. 501, 508 (1947).  In deciding a motion to transfer, the Ninth Circuit

13  instructs district courts to consider the following nine factors:

14      (1) the location where the relevant agreements were negotiated and executed,
    (2) the state that is most familiar with the governing law, (3) the plaintiff's
15    choice of forum, (4) the respective parties' contacts with the forum, (5) the
    contacts relating to the plaintiff's cause of action in the chosen forum, (6) the
16    differences in the costs of litigation in the two forums, (7) the availability of
    compulsory process to compel attendance of unwilling non-party witnesses,
17    (8) the ease of access to sources of proof, and (9) the public policy
    considerations of the forum state.

18  *Jones v. GNC Franchising, Inc.*, 211 F.3d 495, 498-99 (9th Cir. 2000) (internal

19  //

20  //

21  //

22

1  footnotes omitted).  "Additionally, the presence of a forum selection clause is a

2  'significant factor' in the court's § 1404(a) analysis."[4]  *Id.* at 499.

3        Defendants bear the burden of showing that a transfer is appropriate.  *See Piper*

4  *Aircraft Co. v. Reyno*, 454 U.S. 235, 255-56 (1981); *T-Mobile USA, Inc. v. Selective Ins.*

5  *Co. of Am.*, No. C15-1739JLR, 2016 WL 1464468, at *3 (W.D. Wash. Apr. 14, 2016).

6  The decision to transfer, however, "is ultimately left to the sound discretion of the district

7  court and must be made on an 'individualized, case-by-case consideration of convenience

8  and fairness.'"  *Stanbury*, 2016 WL 3255003, at *3 (quoting *Stewart*, 487 U.S. at 23)).

9  The court now considers each of the foregoing nine factors in turn, and because the case

10  bears a stronger connection to activities and events in Florida than in Washington, the

11  court grants the motion to transfer.

12  **A.    Location Where the Agreement was Negotiated and Executed**

13        The first *Jones* factor considers the location where the agreement was negotiated

14  and executed.  *See* 211 F.3d at 498.  Organo is a Nevada corporation, licensed and

15  registered to do business in Washington State.  (Resp. at 1.)  Organo's headquarters,

16  however, are located in Richmond, British Columbia, Canada.  (Perrett Decl. ¶ 3.)

17  ARMS is a Cayman Islands limited liability company with its principal place of business

18  in West Palm Beach, Florida (Filon Decl. ¶ 3); Mr. Norman is a resident of West Palm

19  Beach, Florida (Resp. at 2; Compl ¶ 2); and Shark is a Delaware limited liability

20

21        [4] Defendants claim that the Agreements contain a forum selection clause.  (Mot. at 2-3.)
   The Agreements, however, contain a clause in which the parties merely consent to the

22  jurisdiction of Florida courts.  (*See* Agreements ¶ 19.8; Resp. at 11.)  Therefore, this factor does
   not bear on the court's decision.

ORDER - 7

1  company with its principal place of business in New York, New York (Dubiner Decl.

2  (Dkt. # 9) ¶ 3).  ARMS and Organo's representatives first met in 2013 at the Masters

3  Tournament, a professional golf tournament held annually in Augusta, Georgia.  (Filon

4  Decl. ¶ 6.)  Over the next few months, the parties engaged in negotiations via email and

5  telephone from the parties' respective offices in British Columbia, Canada and Florida.

6  (*Id.*; Perrett Decl. ¶ 13.)  Organo emailed the Agreements to Mr. Norman and ARMS,

7  who then signed the Agreements in Florida.  (Filon Decl. ¶6.)  Defendants never traveled

8  to Washington to negotiate the Agreements.  (Perrett Decl. ¶ 13.)

9        Thus, the court finds that the parties negotiated the Agreements in part in British

10  Columbia, Canada, and in part in Florida, via email.  ARMS and Mr. Norman signed the

11  Agreements in Florida and returned them to Canada.  (Filon Decl. ¶ 6.)  Because the

12  parties did not negotiate or execute the Agreements in Washington, but instead in British

13  Columbia, Canada, and Florida, the court concludes that this factor weighs in favor of

14  transfer.

15  **B.     State Most Familiar with the Governing Law**

16        The second factor favors the state that is most familiar with the governing law.

17  *Jones*, 211 F.3d at 499.  The Agreements are to be construed according to Florida law

18  (Mot. at 5; Resp. at 11; Agreements ¶¶ 19.8, 19.10), but "[f]ederal courts are equally

19  equipped to apply distant state laws when the law is not complex or unsettled," *T-Mobile*

20  *USA*, 2016 WL 1464468, at *4.  Here, neither party asserts that the substantive law

21  governing Organo's claims will be complex.  (*See* Mot.; Resp.)  Accordingly, both this

22

1  court and the transferee court are equally equipped to handle the claims in this case.

2  Thus, the court concludes that this factor is neutral.

3  **C.     Plaintiff's Choice of Forum**

4         As the plaintiff in this action, Organo's choice of forum "receives substantial

5  deference," and Defendants must "'make a strong showing of inconvenience' to upset

6  that choice." *Stanbury*, 2016 WL 3255003, at *4 (quoting *Decker Coal Co. v.*

7  *Commonwealth Edison Co.*, 805 F.2d 834, 843 (9th Cir. 1986)).  Organo's forum

8  preference, however, "is not dispositive." *Id.* (citing *Norwood v. Kirkpatrick*, 349 U.S.

9  29, 32 (1955) (holding that "the discretion to be exercised is broader" under § 1404(a)

10  than under the *forum non conveniens* doctrine)).  Furthermore, "[w]here the action has

11  little connection with the chosen forum, less deference is accorded [to] plaintiff's choice,

12  even if plaintiff is a resident of the forum." *Pedigo Prod., Inc. v. Kimberly-Clark*

13  *Worldwide, Inc.*, No. C12-5502BHS, 2013 WL 364814, at *3 (W.D. Wash. Jan. 30,

14  2013) (citing *Norwood*, 349 U.S. at 42)).

15         Organo operates an office and warehouse in Ferndale, Washington, where the

16  Branded Products were stored.  (Perrett Decl. ¶ 9-10; 21.)  However, Organo's claims

17  against Defendants arise from the actions taken—or not taken—by Mr. Norman in

18  Florida.  (*See* Compl. ¶¶ 14-24.)  Furthermore, all of Defendants' negotiations and

19  dealings with Organo were with individuals located in Richmond, British Columbia,

20  Canada, and not with employees located in Ferndale, Washington.  (*See* Filon Decl. ¶ 8.)

21  Although Defendants cannot completely overcome the presumption in favor of Organo's

22  //

ORDER - 9

1   choice of forum, the court finds that the limited connection between Washington and

2   Organo's claims means that this factor weighs only marginally against transfer.  *See*

3   *Pedigo*, 2013 WL 364814, at *3.

4   **D.    Parties' Contacts with the Forum**

5        This factor focuses on the respective parties' contacts with the forum.  As noted

6   above, Organo is a Canadian corporation with its headquarters located in Richmond,

7   British Columbia.  (Perrett Decl. ¶ 3.)  The British Columbia headquarters are "where the

8   majority of Organo's business records are kept, and where the majority of Organo's

9   executive work out of."  (*Id.*)  Organo's Ferndale, Washington office and warehouse

10  employs 10 people who "are principally responsible for managing [United States]

11  logistics in coordination with Organo's headquarters."  (*Id.* ¶ 9.)  The Ferndale office is

12  "responsible for product inventory, collation, assembly, inspection [and] quality

13  assurance, as well as all corresponding logistics."  (*Id.*)  The logistics include storing and

14  processing the Branded Products.  (*Id.* ¶¶ 9, 22.)  Furthermore, the Ferndale office "works

15  in conjunction with [Organo's] Events team, and coordinates all of the logistics for

16  product and event supplies for events held in the [United States] in a calendar year."  (*Id.*)

17  With respect to the IDA, the Ferndale office also processed the approximately 20

18  purchase orders that Mr. Chessler placed.  (*Id.* ¶ 18.)

19       On the other hand, Defendants do not have any contacts with Washington.

20  ARMS, a Cayman Islands company with its principal place of business in West Palm

21  Beach, Florida, does not have an office in Washington and is not registered to do

22  business in Washington.  (Filon Decl. ¶¶ 3-4.)  Furthermore, ARMS does not advertise or

sell any products to Washington residents.  (*Id.* ¶ 4.)  Shark, a Delaware company with its principal place of business in New York, also does not have an office in Washington, nor does it advertise or sell any products to Washington residents.  (Dubiner Decl. ¶¶ 3, 5.)  None of the Defendants own real property or maintain bank accounts or employees in Washington.  (*Id.*; Mot. at 2.)  Neither ARMS nor Mr. Norman has ever visited Organo's Ferndale office or otherwise conducted any business activities in Washington.  (Filon Decl. ¶ 7.)

Organo has extensive contact with Washington through the company's Ferndale office.  Defendants, however, have no contact with the forum.  (*See* Filon Decl. ¶¶ 1, 3, 6.)  Thus, on balance, the court concludes that this factor is neutral.

**E.      Contacts Relating to Plaintiff's Cause of Action in the Chosen Forum**

This factor concerns the contacts between Organo's claims against Defendants and Washington.  As detailed above, Organo's Ferndale office housed and coordinated the logistics pertaining to the Branded Products.  (Perrett Decl. ¶¶ 9, 22.)  However, Organo's claims against Defendants do not arise from the Branded Products but rather from Mr. Norman's alleged lack of performance and the sale of the "Norman Identity" to Shark.  (*See* Compl. ¶¶ 14-24, 33.)  Therefore, virtually all of Organo's case-related contacts occurred either in Canada or Florida.

Organo attempts to connect Mr. Norman's alleged non-performance to Washington by arguing that he was in Washington for a week during 2015 "to broadcast the U.S. Open at Chambers Bay for Fox Sports."  (Perrett Decl. ¶ 25.)  Organo claims that it was "unable to obtain Mr. Norman's cooperation to even meet during the Open,

1    attend an event, or otherwise promote the Branded Products." (*Id.*)  The Agreements,

2    however, do not specify where Mr. Norman's promotional activities were to take place,

3    or that Mr. Norman was under any obligation to promote the Branded Products during

4    that time.  (*See* Compl.; Resp.)  Plaintiffs cannot point to a single action taken by

5    Defendants in Washington that give rise to the claims at issue.  Defendants, however,

6    took actions in Florida, such as the execution of an agreement with Shark, that support

7    transfer.  (*See* Dubiner Decl. ¶ 4; Mot. at 6.)  Accordingly, the court concludes that this

8    factor weighs in favor of transfer to the Southern District of Florida.

9    **F.     Differences in the Cost of Litigation in the Two Forums**

10           When weighing the difference in cost between two forums, courts generally

11   disfavor transferring venue when "transfer would merely shift rather than eliminate"

12   costs and inconvenience.  *T-Mobile USA*, 2016 WL 1464468, at *6 (internal quotation

13   marks omitted) (quoting *Decker Coal*, 805 F.2d at 843).  "The relative cost analysis

14   focuses primarily on the venue's proximity to witnesses."  *Stanbury*, 2016 WL 3255003,

15   at *6.  Defendants claim that the "substantial majority of the potential witnesses" reside

16   in Florida.  (Mot. at 5-6.)  Organo asserts that "at least five members of its executive

17   team" from British Columbia, Canada, will serve as witnesses.  (Resp. at 13-14.)

18           Defendants fail to carry their burden of showing that transfer would reduce costs.

19   At most, the change in venue would merely shift costs to Organo.  *See Decker Coal*, 805

20   F.2d at 843.  Both parties claim to have witnesses who would need to travel depending on

21   the location of the forum, but Defendants fail to indicate how many witnesses may need

22   //

1    to do so.  (*See* Mot. at 5-6; Resp. at 13-14; Reply (Dkt. # 19) at 7.)  Thus, the court

2    concludes that this factor weighs slightly against transfer.

3    **G.     Availability of Compulsory Process**

4         For purposes of a motion to transfer, "[a] court's subpoena power is only relevant

5    if non-party witnesses within the state will likely refuse to testify."  *Stanbury*, 2016 WL

6    3255003, at *7; *see also Silver Valley Partners, LLC v. De Motte*, No. C05-5590RBL,

7    2006 WL 2711764, at *4 (W.D. Wash. Sept. 21, 2006) (concluding that the fact that

8    "[n]one of these witnesses will likely be unwilling to testify" eliminates the factor's

9    importance).  Defendants do not identify any witnesses in Florida who would require a

10   subpoena to appear in Washington.  (*See* Mot.; Reply.)  Therefore, the court concludes

11   that this factor is neutral.

12   **H.     Ease of Access to Sources of Proof**

13        The ease of access to sources of proof primarily focuses on the location of

14   witnesses and documentary evidence.  *See Jinni Tech Ltd. v. Red.com, Inc.*,

15   No. C17-0217JLR, 2017 WL 4758761, at *1 (W.D. Wash. Oct. 20, 2017),

16   *reconsideration denied*, No. C17-0217JLR, 2018 WL 581071 (W.D. Wash. Jan. 25,

17   2018).  However, "the ability to transfer documents electronically with relative ease and

18   little expense may lessen the importance of this factor with respect to documentary

19   evidence."  *Id.*  As discussed above, the key witnesses are located either in British

20   Columbia, Canada or Florida.  (Perrett Decl. ¶ 3; Resp. at 14; Mot. at 5-6.)  Furthermore,

21   because the claims against Defendants do not arise out of the Branded Products, the

22   //

1   evidence is likely documentary, which can be shared electronically.  The court,

2   therefore, concludes that this factor is neutral.

3   **I.    Public Policy of the Forum State**

4           Finally, the court assesses the public policy impact of a transfer.  Public policy

5   factors include the "local interest in having localized controversies decided at home" and

6   deciding cases "where the claim arose."  *Stanbury*, 2016 WL 3255003, at *7 (internal

7   quotation marks omitted) (quoting *Decker Coal*, 805 F.2d at 843).  "Additionally, states

8   have an interest in providing a forum for their injured residents."  *Id.*

9           Washington does not have a strong tie to this litigation.  First, none of the parties

10  are Washington residents.  (*See* Mot.; Resp.)  Second, this dispute arises from two

11  Agreements, neither of which was executed in Washington.  (Filon Decl. ¶ 8; Perrett

12  Decl. ¶ 13.)  Third, even though Organo's Ferndale office and warehouse are located in

13  Washington (Perrett Decl. ¶ 9), Organo's claims do not arise from the Branded Products

14  stored at those facilities (*see* Compl. ¶¶ 14-24).  As discussed extensively above,

15  Organo's claims against Defendants arise solely from activity outside of Washington, and

16  accordingly, are not "localized controversies."  *See Stanbury*, 2016 WL 3255003, at *7

17  (internal quotation marks omitted) (quoting *Decker Coal*, 805 F.2d at 843).  Of particular

18  importance, Organo asserts that Mr. Norman and ARMS "sold or otherwise transferred

19  the underlying rights and obligations" under the Agreements to Shark "without the

20  express consent of Organo."  (Compl. ¶ 22-23.)  Mr. Norman's actions took place entirely

21  outside of Washington.  Thus, Florida's interest in the present action is stronger than

22  Washington's because nearly all of the Defendants reside in Florida and nearly all of the

ORDER - 14

alleged actions took place in Florida.  Accordingly, the court finds that this factor supports transfer.

**J.      Balancing the *Jones* Factors**

In light of the foregoing factors, the court concludes that transfer to the Southern District of Florida is appropriate.  The court finds that only two factors weigh against transfer—factors three and six.  Of the remaining factors, four are neutral—factors two, four, seven, and eight—and three weigh in favor of transfer—factors one, five, and nine. Most importantly, the parties' case-related contacts are not sufficient to show that Washington has a "local interest" in this case.  *See Stanbury*, 2016 WL 3255003, at *7. Thus, the court grants Defendants' motion.[5]

## IV.      CONCLUSION

For the reasons set forth above, the court GRANTS Defendants' motion to transfer venue pursuant to 28 U.S.C. § 1404(a) (Dkt. # 8).  The court DIRECTS the Clerk of the Court to transfer this case to the Southern District of Florida.

Dated this 24th day of May, 2018.

JAMES L. ROBART
United States District Judge

---

[5] Because the court grants the motion to transfer, the court declines to decide Defendants' alternative basis for relief—dismissal for lack of personal jurisdiction.  (*See* Mot.)

ORDER - 15